BAUMET ET AL. *v.* UNITED STATES ET AL.

No. 39. Argued October 15, 1952.—Decided November 17, 1952.

*Louis A. D'Agosto* argued the cause and filed a brief for petitioners.

*Morton Liftin* argued the cause for the United States. With him on the brief were *Acting Solicitor General*

*Stern, Assistant Attorney General Baldridge* and *Paul A. Sweeney.*

*Thomas Thacher* argued the cause for Peters, individually and as Executrix, respondent. With him on the brief was *George G. Gallantz.*

MR. JUSTICE CLARK delivered the opinion of the Court.

Based on conflicting claims to the proceeds of a National Service Life Insurance policy, this is a companion case to *United States* v. *Henning, ante,* p. 66, decided today.

The controversy is bottomed on the following facts: At the time of the insured serviceman's death in 1942, his policy designated John J. Peters, his uncle, as sole beneficiary. Challenging the uncle's standing as a permissible beneficiary under the statute, William Baumet, the insured's natural father, instituted an action to claim the proceeds.[1] Before that action came to trial, John J. Peters died.[2] After a subsequent trial of the cause, the District Court found that John J. Peters and his wife Julie Peters had stood *in loco parentis* to the insured from 1938 until his death, and that the natural father's

---

[1] The insured's natural mother died in 1936, and no claim is raised on her behalf. However, the infant half-brothers and half-sisters of the insured by their guardian *ad litem* filed a claim asserting that they followed their father William Baumet on the priority ladder of § 602 (h)(3); 38 U. S. C. § 802 (h)(3). But their standing under § 602 (h)(3)(D) is conditioned on the absence of takers qualifying under § 602 (h)(3)(C). Since we find such a taker, their claims need not be considered here.

[2] Julie Peters, as John's executrix, moved for substitution in his stead. The District Court denied the motion, on the ground that John J. Peters' rights were extinguished by his death. 81 F. Supp. 1012 (S. D. N. Y. 1948). The Court of Appeals reversed, holding that accrued installments passed to a deceased beneficiary's estate. 177 F. 2d 806 (2d Cir. 1949), cert. denied, 339 U. S. 923 (1950). A subsequent trial followed.

contemporaneous conduct had amounted to an abandonment of his son.[3] Concluding that John J. Peters, as a person *in loco parentis,* was a validly designated beneficiary under the Act,[4] it dismissed Baumet's complaint. Accordingly, the court awarded the installments which had matured during John J. Peters' lifetime to Julie Peters as his personal representative, and the installments thereafter maturing to Julie individually as a person *in loco parentis* who "last bore" the parental relationship to the insured.[5] The Court of Appeals affirmed.[6] It agreed that "after 1938 his father never saw him, manifested no interest in his career and contributed nothing toward his support"; in fact, there was "a permanent estrangement between them."[7] And it approved the District Court's allocation of the policy's proceeds. In so holding, the Court of Appeals assumed that estates of deceased beneficiaries were proper takers, and that the foster parents had long supplanted the natural father in the parental relationship to the insured. In any event, the court thought, "the insured can have but one maternal parent and one paternal parent."[8] We granted certiorari, 343 U. S. 925.

For the reasons detailed in *United States* v. *Henning, supra,* we hold that estates of deceased beneficiaries may not take proceeds under the Act. The award to John J. Peters' personal representative must therefore fall. In regard to the natural father's claim, the District Court's findings sharply reveal that William Baumet long before

---

[3] The District Court's unreported findings and opinion are reprinted at pp. 10 to 24 of the Appendix to the Brief for the United States.

[4] §§ 601 (f), 602 (g); 38 U. S. C. §§ 801 (f), 802 (g).

[5] § 602 (h)(3)(C); 38 U. S. C. § 802 (h)(3)(C).

[6] *Baumet* v. *United States,* 191 F. 2d 194 (2d Cir. 1951).

[7] *Id.,* at 195–196.

[8] *Ibid.*

his son's death had "abandoned his son" and ceased to be a parent in truth and fact. He may not now retrieve the discarded paternal robes to lay claim to the policy proceeds; to rule otherwise would foil the plain intent of the 1942 amendments. Since the foster parents, not he, "last bore" the parental relationship, he cannot qualify as a taker by devolution under § 602 (h)(3)(C) of the Act. For that reason we hold that the foster mother, Julie Peters, as the sole survivor of those who "last bore" the parental relationship, in her own right must take all accrued policy proceeds.

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON, for the reasons stated in the dissenting opinion of MR. JUSTICE JACKSON in *United States* v. *Henning, ante,* p. 79, decided this date, dissent from the Court's refusal to permit the deceased beneficiary's estate to share in the proceeds.

MR. JUSTICE DOUGLAS, dissenting in part.

I think William Baumet and Julie Peters should share the accrued policy proceeds *pari passu.* I believe that the natural father as well as the foster mother "last bore" the parental relationship to the insured. No law, no dictionary, no form of words can change that biological fact. The natural father, as well as the natural mother, remains a parent no matter how estranged parent and child may become. A stranger may by conduct become a foster parent; but no conduct can transmute a natural parent into a stranger.